MARY JOHNSON BENTLEY v. THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY OF CINCINNATI, OHIO.

(Filed 21 September, 1966.)

1. Insurance § 34—

Evidence of plaintiff tending to show that insured fell, fracturing his right clavicle, and died some 15 days thereafter due to the injury and to insured's acute emphysema and myocarditis, *held* insufficient to show that the death ensued as a direct result of the injury, independent of all other causes.

2. Appeal and Error § 41—

The exclusion of evidence cannot be prejudicial when all the evidence, including the excluded evidence, is insufficient to take the issue to the jury.

APPEAL by plaintiff from *Farthing, J.,* March-April 1966 Regular Session of TRANSYLVANIA.

Plaintiff sues to recover death benefits under a policy of insurance issued to her deceased husband, she being the named beneficiary in the policy. In addition to the policy, itself, she introduced evidence tending to show:

On 1 April 1963 the insured fell from his bed to the floor. Immediately thereafter he said he had broken his ribs and shoulder. A "crushing sound" could be heard in the area of his ribs. Until his death on 15 April 1963 he complained of pain in his side and was unable to lie down to sleep. On the day before his death, each time he breathed there was a "gritting" sound in his side.

Prior to his fall the insured worked regularly at his employment and in doing chores about his home, his general appearance being good. However, he had emphysema and had suffered from asthma for several years.

The day after the fall an x-ray examination was made by Dr. Sader, the attending physician, who was not called as a witness. No x-ray picture was offered in evidence. The plaintiff "believes" Dr. Sader diagnosed the injury as a broken collarbone and broken ribs.

On advice of Dr. Sader the insured went to the hospital on the evening of 14 April for further x-ray examination, there being no evidence that any such further examination was made. He died the following morning. Dr. Sader did not inform the plaintiff of the cause of death. No autopsy was performed.

The hospital records show the admitting diagnosis was fracture of the right clavicle and acute emphysema, cough and shortness of breath. These records state the cause of death to be "acute emphysema, and bronchitis, and myocarditis, and arteriosclerosis, and coronary closure."

Dr. Cannon, who was not the attending physician at the time in question, and who last saw the insured professionally in January, testified that, "In addition to asthma, he had emphysema with which he had been living for a number of years."

The court sustained the defendant's objections to two hypothetical questions, substantially the same, directed to Dr. Cannon. Had he been permitted to answer, Dr. Cannon would have said, "Knowing his condition and the condition of his chest and everything, my opinion would be that the cause of death was due to the injury plus the complication accompanying it."

Neither the insured nor the plaintiff communicated with the defendant concerning his fall or death prior to 1 May 1963, 30 days after the fall, at which time the defendant's agent, who had read in the newspaper of the insured's death, came to the plaintiff's home. She then inquired of the agent as to whether he had "turned it in,"

there being no evidence that she then informed the agent about the fall. Nearly two years after the fall proof of loss forms, supplied to the plaintiff by the defendant, were completed by the attending physician and transmitted to the defendant by the plaintiff.

Pertinent provisions of the policy include:

"If the death of the Insured occurs * * * as a direct result of * * * bodily injuries sustained independently of all other causes through violent, external and accidental means, of which, except in case of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound, THIS COMPANY WILL PAY * * *

* * * *

"Death * * * resulting directly or indirectly, wholly or partially from any of the following causes are risks not assumed under this policy:

* * * *

"e.  Disease, bodily or mental infirmity * * *

* * * *

"Written notice of injury on which claims may be based must be given to the Company within 20 days after the date of the accident causing such injury.

* * * *

"Affirmative proof of loss must be furnished to the Company at its said office within 90 days after the date of the loss for which claim is made."

At the conclusion of the plaintiff's evidence, the court granted the defendant's motion for a judgment of nonsuit. The plaintiff assigns as error only the granting of the motion for such judgment and the sustaining of the defendant's objections to the two hypothetical questions propounded to Dr. Cannon.

*Potts & Hudson for plaintiff appellant.*
*Ramsey, Hill & Smart for defendant appellee.*

PER CURIAM.  The burden was upon the plaintiff to prove that the death of the insured was an event covered by the policy and that she gave to the defendant, within the time specified in the policy, the notice of the alleged injury and the proof of loss required by the policy. *Brevard v. Insurance Co.,* 262 N.C. 458, 137 S.E. 2d 837; *Fallins v. Insurance Co.,* 247 N.C. 72, 100 S.E. 2d 214. The evidence, interpreted in the light most favorable to the plaintiff, together with all inferences in her favor which may reasonably

be drawn therefrom, is not sufficient to support a verdict to that effect. This would still be true even if Dr. Cannon had been permitted to answer the hypothetical questions propounded to him. It is, therefore, unnecessary to determine whether the objections to those questions were properly sustained. The judgment of nonsuit is
    Affirmed.